U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED  LAFAYETTE

NOV 8 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

Thompson

Civil Action No. 11-01771

versus

Judge Richard T. Haik, Sr.

LifePoint Hospitals, Inc., et al

Magistrate Judge C. Michael Hill

## MEMORANDUM RULING

Before the Court are defendants' reasserted Motions To Dismiss the Relators' *Qui Tam* Complaint filed by Dr. Charles Aswell, III [Rec. Doc. 31; 54], LifePoint Hospitals, Inc. ("LifePoint") [Rec. Doc. 33; 55] and Ville Platte Medical Center, LLC [Rec. Doc. 44][1] against plaintiff, Dr. Craig Thompson, plaintiff's Opposition [Rec. Doc. 39] and defendants' replies [Rec. Doc. 43, 48]. Also before the Court is plaintiff's Motion To Strike Exhibits Attached To Dr. Charles Aswell's Motion To Dismiss [Rec. Doc. 38] and Plaintiffs' Memorandum in Opposition thereto [Rec. Doc. 33]. For the following reasons, the defendants' motions to dismiss will be granted, Dr. Aswell's motion for attorneys' fees will be denied, and plaintiff's motion to strike will be denied as moot.

### I. Background

This action was filed on October 5, 2011 by Relator, Craig Thompson, M.D.

---

[1] LifePoint Hospitals, Inc. represents that Ville Platte Medical Center is owned and operated by an indirect subsidiary of LifePoint, Ville Platte Medical Center, LLC. *R. 33.* Relator amended his complaint adding Ville Platte Medical Center, LLC, as a defendant on July 29, 2013. *R. 35.* The Court will refer to defendants LifePoint Hospitals, Inc. and Ville Platte Medical Center, LLC as "the Hospital."

("Relator"), under the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq*, and the Anti-Kickback Statute for alleged fraudulent billing on the part of Ville Platte Medical Center, a LifePoint-owned facility located in Ville Platte, Louisiana, and a member of its medical staff, Dr. Aswell. *R. 1, ¶ 1*. On March 19, 2013, the United States filed a Notice into the record that it was not intervening in this action. *R. 18.*

In his Verified Complaint, Relator alleges that Dr. Aswell "regularly performed upper endoscopies on patients when their medical indications and symptoms did not warrant the procedure, or a less invasive procedure would have accomplished the same medical goal" with "greater frequency than indicated by accepted medical practice .... in order to increase his billable contact with the patient." *R. 1, ¶¶ 17, 18, 19, 20.* Relator also alleges that Dr. Aswell "regularly failed to accurately note his patient's physical condition," using instead a "standard template which indicated a uniformly 'normal' condition" of all his patients, resulting in inaccurate patient progress notes which detracted from patient care. *Id. at ¶¶ 26, 27.* Relator provides one example of an inaccurate exam note in which Dr. Aswell described a patient's amputated leg as "intact and 'normal'." *Id. at ¶ 28.* Relator further alleges that Dr. Aswell's progress notes indicate he performed a comprehensive physical exam every time he came in contact with a paiient using equipment not routinely available to him at the Hospital. *Id. at ¶ 29.* Relator contends Dr. Aswell employed the template to reduce his administrative work and to increase reimbursements due from the Centers for Medicare and Medicaid Services ("CMS"). *Id. at ¶ 30, 40.*

2

Relator alleges that he met with the chief executive officer of the Ville Platte Medical Center, Alan Daugherty, in March 2009 to relate these practices.  Relator alleges that Daugherty submitted Aswell's progress reports to an external auditor, who determined the documentation practices were "severely substandard." *Id. at ¶¶ 21, 22, 23, 31*. Relator then states that, to his knowledge, neither Ville Platte Medical Center nor Lifepoint did anything about the endoscopy practice or the auditor's report and the practices continued unabated because Ville Platte Medical Center is a "direct financial beneficiary." *Id. at ¶¶ 23, 34*.

Relator also alleges that defendants are in non-compliance with CMS "swing-bed" requirements.[2]  Relator asserts that under 42 C.F.R. § 48315(f)(2), swing-bed hospitals are required to provide an ongoing program of activities designed to meet the interests and the physical, mental and psychosocial well-being of each patient and that this program must be directed by a qualified therapeutic recreation who is licensed and registered.  *Id. at ¶ 43*. Relator alleges that because "at no time was a 'qualified therapeutic recreation specialist' on staff," the Hospital was an unqualified facility and each reimbursement was wrongfully paid by Medicare and constituted a separate and distinct false claim.  *Id. at ¶¶ 44 - 48*.  Relator alleges that Ville Platte Medical Center "used the Swing-Bed Program to circumvent

---

[2] Congress in 1980 authorized the Secretary of Health and Human Series to contract with certain small rural hospital providers to provide "swing-beds."  The Social Security Act permits certain small rural hospitals to enter a swing bed agreement.  Under this agreement, the hospital can use its beds, as needed, to provide acute or skilled nursing care to the patient.  As defined by federal regulations, a swing bed hospital is a hospital or critical access hospital participating in Medicare that has approval to provide post-hospital skilled care and meets certain requirements. Medicare Part A (the hospital insurance program) covers post-hospital extended care services given by a swing bed hospital.  CMS.gov.

reimbursement limitations inherent in Medicare's DRG(diagnosis related group)-based reimbursement system"and knowingly submitted false or inaccurate documentation to CMS to conceal its non-compliance. *Id. at ¶¶ 49-50.*

Finally, Relator alleges that  Ville Platte Medical Center violated the Anti-Kickback Statute of the Medicare and Medicaid Patient Protection Act of 1987, as amended, 42 U.S.C. § 1320a-7b, by providing  Dr. Robert Craig, a non-employee physician, housing at less than the fair market rent as an incentive to relocate to Ville Platte and refer patients under his care to Ville Platte Medical Center. *Id. at ¶¶ 52-55.*

Defendants filed the motions to dismiss the Complaint and award attorneys fees at bar pursuant to Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure on  July 15, 2013 and July 24, 2013.  On September 27, 2013, the Court denied the motions without prejudice in order to allow Relator 15 days to amend his Complaint and movants could reassert their motions thereafter.  Because Relator did not amend his Complaint, defendants move to reassert their motions.

Defendants contend that Relator: (1) has failed to adequately plead facts which support a violation of the False Claims Act pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; (2) has failed to allege fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure; and, (3) is not an "original source" pursuant to 31 U.S.C. § 3730(e)(4).

### *II. Legal Standards*

4

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Claims brought under the FCA are fraud claims that must also comply with the supplemental pleading requirements of Rule 9(b), demanding that "a party must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b); *see United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 468 (5th Cir.2009). Pleading fraud with particularity requires that "[a]t a minimum ... a plaintiff [must] set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1997). In the context of the FCA, Rule 9(b) is "context specific and flexible," and a plaintiff may sufficiently state a claim with particularity "without including all the details of any single court-articulated standard—it depends on the elements of the claim in hand." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 189-90 (5th Cir.2009).

### III. Analysis

Claims brought under the FCA must be pleaded with particularity pursuant to Federal Rule of Civil Procedure 9(b). *United States ex rel. Doe v. Dow Chemical Co.*, 343 F.3d 325,

328 (5th Cir.2003). A dismissal for failure to meet the requirements of Rule 9(b) is a dismissal for failure to state a claim. *Id*. To state a claim under the FCA, Relator must allege four essential elements: (1) defendant presented or caused to be presented to the United States a claim for payment or approval; (2) the claim was false or fraudulent; (3) defendant acted knowingly or with deliberate ignorance or in reckless disregard concerning the truth of the information contained in the claim presented; and (4) damages resulted. *See Arnold v. U.S.*, 180 F.3d 265, *2 (5th Cir. May 6, 1999) (citing 31 U.S.C. § 3729(a)). Defendants contend that Relator's Complaint relies upon "broad, conclusory allegation[s]" and fails to adequately plead that the Hospital submitted any false claim for payment or false statement or record used to get a false claim paid.

### False/Fraudulent Certifications

Relator's Complaint does not specify which particular FCA provisions he is relying on in bringing this action.  Regardless of the provision, however, the Fifth Circuit has repeatedly held that a relator can not maintain a FCA case unless: (1) the provider was required to file a certification in connection with the claim; (2) the filed certification was false; and, (3) relator identified specific claims and/or certifications that were fraudulent. *Thompson*, 125 F.3d at 903. In *U.S. ex rel. Nunnally v. West Calcasieu Cameron Hosp.*, 519 Fed.Appx. 890, 894 (5th Cir. 2013), the court affirmed the district court's dismissal of relator's *qui tam* complaint for failure to state a claim.  The court found insufficient an allegation that the defendant was "periodically either certifying in writing or impliedly

6

certifying to the Medicare program that it complied with all of Medicare's program rules, regulations, and laws applicable thereto." *Id*. The court noted, "Nunnally's complaint does not identify a single claim submitted by [the hospital] for services rendered pursuant to an illegal referral, let alone one for which [the hospital] expressly certified its compliance with federal law." *Id., see also Sealed Appellant I v. Sealed Appellee I*, 156 Fed.Appx. 630, 633 (5th Cir. 2005)(dismissing *qui tam* complaint because it did "not identify a single false claim that was actually submitted to the government").

Although Relator's complaint in this case is somewhat detailed regarding the procedures allegedly undertaken by Dr. Aswell, it fails to make adequate factual allegations that Aswell or the Hospital committed fraud against the government. Relator alleges no specific facts in support of his general allegation that defendants submitted false claims. Instead, Relator makes relatively detailed statements about the alleged schemes carried out by Dr. Aswell and then ends the description of each scheme with a general summation that typically states that the fraudulent acts were committed by Aswell and/or ignored by the Hospital to increase CMS reimbursement payments. *R. 1, ¶¶ 12, 20, 23, 30, 37, 49*. Relator has failed to identify a single claim that was actually submitted pursuant to the allegedly fraudulent schemes identified in the Complaint and Amended Complaint.

Relator has set out the procedure and process by which defendants could have produced false claims, but provides no facts that this process did, in fact, result in the submission of false claims.  Relator alleges generally that defendants, "were required to

7

certify each claim for payment under the [sic] Medicare or Medicaid as being accurate, eligible and appropriate.  Each claim for payment and each such reimbursement involving procedures that were unnecessary, exaggerated or improper, including but not limited to those described above, constitutes a separate violation of the federal FAC." *R. 1, ¶59*.  Under the false certification theory, the Complaint must allege with particularity an actual certification to the government that was a prerequisite to obtaining payment.  *See Thompson*, 125 F.3d at 903. Relator's allegation falls short of the requirement that a claim of false certification be pled with particularity, identifying facts such as what the certification of compliance stated, who submitted the certification, when and where it was submitted to the government, and how the actual certification was false. *Id.*

Relator asserts that "he acquired firsthand knowledge of the false claims described" in his complaint, but generally bases his allegations on "information and belief." *R. 1, ¶¶ 19, 20, 23, 30, 35, 37, 49, 50, 53, 55.*  Even where allegations are based on information and belief, the complaint must set forth a factual basis for such belief.  *U.S. ex rel. Brinlee v. AECOM Government Services, Inc.*, 2007 WL 496623, 3 (W.D.La.,2007)(citing *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993)).

### *Rule 9(b)*

In *U.S. ex rel. Mallavarapu v. Acadiana Cardiology, LLC,* 2010 WL 3896425, 19 (W.D.La.,2010), the court found the complaint met the requirements of 9(h) in that it provided "explicit detail regarding defendants' performance of various medical procedures

for which they were reimbursed by Medicare from January 1, 2000 until December 31, 2003. The court noted specifically that "[t]he procedures themselves are described in detail, the dates of service are itemized, the date the claims were submitted are itemized, the amounts paid are itemized and the exhibit that is not attached to the complaint, but is referenced and filed under seal, lists the names of the patients and their HIC numbers." *Id.*

Here, Relator claims that Dr. Aswell performed medically unnecessary procedures on patients at the Hospital, including but not limited to upper endoscopies. He fails to allege fraud with particularity as required by Rule 9(b) of the ~~Federal~~ Rules of Civil Procedure, however, because he fails to provide any details relating to specific patients, when such procedures were performed, the manner in which the procedures were unnecessary or how he has personal knowledge of the allegations. As provided in his Complaint, Relator states he met with the hospital chief executive officer of Ville Platte Medical Center in March 2009 "to relate his concerns about Dr. Aswell's practices with respect to endoscopic procedures" but he is not aware of whether or not an investigation occurred. *R. 1, ¶¶ 21-22.* Yet, in the next paragraph, he concludes that the hospital did not investigate because it was a direct financial beneficiary of the endoscopic procedures. *R. 1, ¶ 23.*

Relator's claims that Dr. Aswell fraudulently documented patient encounters also lacks specificity as when such incidents occurred, what the patient's conditions were and why they should have been noted. More importantly, Relator neither explains how the alleged failure constitutes a false claim nor identifies an actual false claim or certification that was

submitted from such failure.

As to Relator's claim that the Hospital did not comply with CMS "Swing-Bed" requirements, the only factual allegation in his Complaint that could relate to a false claim is that the Hospital did not have a qualified therapeutic recreation specialist on staff. *R. 1, ¶ 44.* Relator, however, fails to identify any compliance certifications or claims related to the swing-bed program or who submitted them.

### *Anti-Kickback Statute*

Relator alleges the Hospital had an inappropriate financial relationship with Dr. Robert Craig, in violation of the Anti-Kickback Statute ("AKS"). The AKS is a criminal statute prohibiting the knowing or willful offering to pay, or soliciting, any remuneration to induce the referral of an individual for items or services that may be paid for by a federal health care program. *See* 42 U.S.C. § 1320a–7b(b)(1–2); *Thompson*, 125 F.3d at 901. A violation of the AKS can serve as the basis for a FCA claim when the Government has conditioned payment of a claim upon the claimant's certification of compliance with the statute, and the claimant falsely certifies compliance. *See Thompson*, 125 F.3d at 902. The elements of the AKS violation must also be pleaded with particularity under Rule 9(b), because they are brought as a FCA claim. *See United States ex rel. Bennett v. Medtronic, Inc.*, 747 F.Supp.2d 745, 783–785 (S.D.Tex.2010).

Here, the only allegation in relation to Dr. Craig is that he "moved into an apartment maintained by Ville Platte Medical Center where he did not pay fair market rent, if rent was

10

paid at all." *R. 1, ¶ 53.* Relator does not describe when this supposed arrangement began or ended or any details of the arrangement, i.e. how much rent was paid, what apartment Relator is referring to, or who was involved in setting up the arrangement. Once again, because Relator fails to identify a single Medicare or Medicaid patient or a single claim submitted to the government for services resulting from the allegedly illegal referral, Relator's allegations fail to meet the bar required by Rule 9(b).

Based on the foregoing, the Court will dismiss Relator's Complaint under 12(b)(6) and 9(b). Accordingly, the Court need not address Dr. Atwell's assertion that Relator is not an "original source" as required under 31 U.S.C. § 3730(e)(4) nor defendants' contention that LifePoint Hospital Inc. should be dismissed from this action. Because Relator's Motion To Strike is related to exhibits attached to Dr. Aswell's contentions regarding "original source," plaintiffs' motion to strike will be denied as moot.

## *Attorneys' Fees and Expenses*

Dr. Aswell moves the Court to award him attorneys' fees and expenses. 31 U.S.C. § 3730(d)(4) of the FCA provides in relevant part:

> (4) If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment.

"An action is clearly vexatious or brought primarily for purposes of harassment when the plaintiff pursues the litigation with an improper purpose, such as to annoy or embarrass the

defendant." *Rafizadeh v. Continental Common, Inc.*, 553 F.3d 869, 875 (5th Cir.2008). But, "the award of fees under the false claims act is reserved for rare and special circumstances." *Id.*

Aswell contends that Relator "is mad that the Hospital sought to enforce the loan repayment obligations Relator agreed to in the Recruitment Agreement" and "since resigning in March 2010, Relator has done everything possible to avoid repaying the Hospital." Aswell's unsupported contentions, however, fail to establish that this action is "clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment." The Court therefore finds Aswell's motion for attorneys' fees and expenses are not appropriate in this case.

### IV. Conclusion

Relator's Complaint fails to state a claim upon which relief can be granted and the motions to dismiss filed by Dr. Charles Aswell, III, LifePoint Hospital, Inc. and Ville Platte Medical Center's will be granted. Further, Dr. Charles Aswell, III's motion for attorneys' fees and expenses will be denied and Plaintiff's Motion to Strike will be denied as moot.

Richard T. Haik, Sr.
United States District Judge

12